Keith **COFIELD, Kathy Lasha, Steven Wallace, George Emerson, and Joan Andrews, Plaintiffs,**

v.

Bobby **CRUMPLER, Individually, and Bob Crumpler Denbigh Nissan, Inc ., d/b/a Country Village Mobile Home Park, Defendants.**

**No. 4:97CV18.**

United States District Court, E.D. Virginia, Newport News Division.

April 22, 1998.

Leonard Anthony Bennett, L. Kim Van Horn, Overman, Cowardin & Martin, P.L.C., Newport News, VA, for Plaintiffs.

Glen A. Huff, Albert Harrison Poole, Timothy Meade Richardson, Huff, Poole & Mahoney, Virginia Beach, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on plaintiffs' motion to review taxation of costs pursuant to Rule 54 of the Federal Rules of Civil Procedure.

### I.  Factual and Procedural History

Plaintiffs Keith Cofield, Kathy Lasha, Steven Wallace, George Emerson, and Joan Andrews, on behalf of themselves and as representatives of a class of all others similarly situated,[1] filed suit on February 25, 1997, against defendants Bobby Crumpler, individually, and Bob Crumpler's Denbigh Nissan, Inc., d/b/a Country Village Mobile Home Park, alleging violations of Title VIII of the Civil Rights Act of 1964, the Federal Fair Housing Act, and the Virginia Fair Housing Law, as well as intentional infliction of emotional distress and malicious prosecution, all in connection with defendants' management and operation of Country Village Mobile Home Park ("Country Village") in James City County, Virginia.

A jury trial was held from September 22, 1997, through October 1, 1997. At trial, plaintiffs attempted to show that defendants intentionally discriminated against the three African–American plaintiffs, based on their race, in the operation of defendants' mobile home park. Allegations included refusal to rent to prospective African–American tenants; "steering" of prospective African–American tenants to less desirable areas of the mobile home park; and, refusal to provide timely repairs and maintenance on lots rented by African–Americans. With regard to the two white plaintiffs, plaintiffs attempted to prove at trial that defendants punished, sanctioned, disciplined and/or abused these two employees of the mobile home park, when they tried to stop or limit defendants' alleged racially discriminatory conduct.

The jury returned a verdict in favor of defendants on all claims. Following entry of the jury verdict, defendants sought costs from plaintiffs pursuant to Rule 54 of the Federal Rules of Civil Procedure. In accordance with Rule 54(d), defendants filed a bill of costs, accompanied by supporting documentation and a sworn affidavit, with the clerk of the court on November 10, 1997. The bill of costs contained the following items:

| | |
|---|---|
| (1) Fees for service of summons and subpoenas | $525.00 |
| (2) Fees of court reporter for transcript | $265.00 |
| (3) Fees for witnesses | $400.00 |
| (4) Fees for exemplification and copies | $163.98 |
| (5) Costs incident to taking depositions | $7,897.71 |
| TOTAL: | $9,251.69 |

On January 29, 1998, the clerk of the court granted defendants costs in the amount of $6,649.98.[2]

On February 6, 1998, plaintiffs filed a motion to review the clerk's taxation of costs, accompanied by a memorandum in support of the motion, pursuant to Fed.R.Civ.P. 54. Defendants filed a response to plaintiffs' motion for review of taxation on February 26, 1998. The court has thoroughly reviewed the motion, memoranda, and record in this case, and finds no hearing necessary to address plaintiffs' motion. The matter is now ripe for determination.

---

1. The court denied plaintiffs' motion for class certification on July 9, 1997.

2. The clerk disallowed the following items on defendants' bill of costs: fees of court reporter for transcript of final pre-trial conference, fees for expedited delivery of deposition transcripts, and various miscalculated postage fees.

## II. Analysis

In deciding this motion to review taxation of costs, the court looks to Rule 54 of the Federal Rules of Civil Procedure, the taxation-of-costs statutes, and relevant case law.

Rule 54 of the Federal Rules of Civil Procedure provides in pertinent part that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d)(1). It is the clerk of the court who "taxes" (i.e., assesses) costs. *Id.* On motion made within five days of taxation, the action of the clerk may be reviewed by the court. *Id.* The court reviews *de novo* the clerk's taxation of costs. 10 Moore's Federal Practice § 54.100[3], at 54–145.

■■■ Rule 54 does not provide the district court with "unrestrained discretion to reimburse the winning litigant for every expense he has seen fit to incur." *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 234, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). The court may only tax those costs authorized by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 444–45, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). However, the court has wide latitude to award costs, so long as the costs are enumerated in the general taxation-of-costs statute, 28 U.S.C. § 1920.[3] *Id.* Once it is established that an item falls within 28 U.S.C. § 1920, the prevailing party is presumed to be entitled to recover costs, and the burden is on the losing party to show impropriety of an allowance. *Principe v. McDonald's Corp.,* 95 F.R.D. 34, 35 (E.D.Va. 1982). The district court's award of costs will not be disturbed on appeal, absent an abuse of discretion. *Herold v. Hajoca Corp.,* 864 F.2d 317, 321 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *see Flint v. Haynes,* 651 F.2d

970, 973 (4th Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982).

Since a jury verdict was returned in favor of defendants on all claims, there is no question that defendants are the prevailing party in this suit. Moreover, plaintiffs do not object to item 2 on the bill of costs (fees for court reporter for transcript), because the clerk did not award these costs to defendants. Plaintiffs also do not object to the clerk's award of fees for exemplification and copies (item 4 on bill of costs). Accordingly, no further discussion is required with respect to items 2 and 4, and the clerk's action with regard to these items is AFFIRMED.

Plaintiffs have raised an objection to the three remaining items on defendants' bill of costs: fees for service of subpoenas, fees for witnesses, and costs incident to depositions. The court will examine each of the objections in turn, then address plaintiffs' more general objections to defendants' bill of costs.

### A. Fees for Service of Subpoenas

■■■ Plaintiffs object to the award of fees for service of subpoenas. On the bill of costs, defendants listed $525.00 in fees for service of subpoenas. Receipts attached to the bill of costs indicate that the subpoenas were delivered by a private process server. The clerk taxed the entire $525.00 sought by defendants.

Plaintiffs argue that the fees for subpoenas for production of documents are non-taxable, because the documents produced pursuant to the subpoenas were not ultimately admitted or "otherwise used at trial." Pls.' Memo. in Supp. of Mo. to Review Clerk's Taxation at 2, ¶ 1. Defendants respond that the fees are taxable, because the documents sought by way of subpoena were reasonably necessary in preparation for litigation. Defendants point out that subpoenas were issued only to

---

**3.** 28 U.S.C. § 1920 specifies the costs that may be taxed:

A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

those persons who had provided documents to plaintiffs previously.

Plaintiffs argue that the fees for subpoenas directing witnesses to appear at trial are non-taxable, because defendants did not ultimately call any of the subpoenaed witnesses to testify at trial. *Id.* Defendants argue that these were necessary trial witnesses, whether or not they testified at trial. Defendants point out that all of the witnesses appeared at trial and were recognized by the court, although not all of them ultimately testified.

Both the plaintiffs and the defendants missed the issue of crucial importance in this matter: on its face, the general taxation-of-costs statute, 28 U.S.C. § 1920, does not permit taxation of fees of *private* process servers. Rather, 28 U.S.C. § 1920 provides that "fees of the clerk and marshal" may be taxed. *See* 28 U.S.C. § 1920(1). As 28 U.S.C. § 1921 explains,

> [t]he United States marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for . . . [s]erving any writ, order or process in any case or proceeding . . . [or] a subpoena or summons for a witness or appraiser.

28 U.S.C. § 1921(a)(1).

A bankruptcy court within this district recently conducted an exhaustive review of the case law governing taxation of fees for service of subpoenas. *See D & B Countryside, L.L.C. v. Newell (In re D & B Countryside, L.L.C.),* 217 B.R. 72 (Bankr.E.D.Va.1998). In *Newell,* as in the instant case, the prevailing party sought fees for service of subpoenas by a private process server.[4] The bankruptcy court held that, in light of the unambiguous language of 28 U.S.C. § 1920, the fees were non-taxable. Numerous courts, most notably the Second and Eighth Circuits, have taken this position. *See, e.g., United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 172 (2d Cir.1996)(holding that plain language of section 1920 does not allow taxing as costs private process fees); *Crues v. KFC Corp.,* 768 F.2d 230, 234 (8th Cir.1985)(same); *Pion v. Liberty Dairy Co.,* 922 F.Supp. 48, 53 (W.D.Mi.1996)(same);

*Zdunek v. Washington Metro. Area Transit Auth.,* 100 F.R.D. 689, 692 (D.D.C. 1983)(same).

The Seventh Circuit has taken what appears to be a unique position on this issue. The Seventh Circuit held that private process server fees are taxable costs, pursuant to 28 U.S.C. § 1920, but only to the extent the fees do not exceed the fees charged by the United States Marshal for service of subpoenas, under like circumstances. *See Collins v. Gorman,* 96 F.3d 1057, 1059 (7th Cir.1996).

Despite the seemingly unambiguous language of 28 U.S.C. § 1920, the Ninth Circuit and several district courts have held that fees for service of subpoenas by a private process server are taxable, because the United States Marshal Service no longer serves summons or subpoenas in most civil cases, under Rule 45 of the Federal Rules of Civil Procedure. *See, e.g., Alflex Corp. v. Underwriters Labs., Inc.,* 914 F.2d 175, 177–78 (9th Cir.1990)(per curiam), *cert. denied,* 502 U.S. 812, 112 S.Ct. 61, 116 L.Ed.2d 36 (1991); *Sullivan v. Chrysler Motors Corp.,* 1997 WL 94236, at *6 n. 5 (D.N.J.1997); *Jacobs v. Central Transp., Inc.,* 1995 WL 408741, at *1 (E.D.N.C.1995); *Tang How v. Edward J. Gerrits, Inc.,* 756 F.Supp. 1540, 1545 (S.D.Fla.1991), *aff'd,* 961 F.2d 174 (11th Cir.1992); *Card v. State Farm Fire & Cas. Co.,* 126 F.R.D. 658, 662 (N.D.Miss.1989), *aff'd,* 902 F.2d 957 (5th Cir. 1990); *Roberts v. Homelite Div. of Textron, Inc.,* 117 F.R.D. 637, 641 (N.D.Ind.1987).

The Fourth Circuit has not ruled on the issue. However, based on the weight of authority in other circuits, and the unambiguous language of 28 U.S.C. § 1920, the *Newell* court held that fees for service of summons and subpoenas are not taxable, where a private process server is used to deliver the summons or subpoenas. *Newell,* 217 B.R. at 76–77. The court adopted the position it believed is "the better-reasoned approach—and the position the Fourth Circuit would adopt." *Id.*

---

4. The *Newell* court analyzed and applied Rule 54(d) and 28 U.S.C. § 1920 to the motion for taxation of costs. These taxation-of-costs provisions likewise apply in bankruptcy proceedings.

This court concurs in the position taken by the bankruptcy court in *Newell.*[5] First, on its face, 28 U.S.C. § 1920 permits taxation of fees for service of subpoenas only where the United States Marshal Service is used. As the court in *Newell* noted, "there is no obvious policy reason why private process server fees should not be recoverable, and it may simply be that Congress has not focused on the need to amend § 1920 to take account of the fact that United States Marshals no longer serve subpoenas in civil cases ." *Id.* If this is the case, Congress is free to amend the statute, but it is not the function of this court to re-write the statute. It is the court's duty to apply the statute as written.[6]

Second, in drafting 28 U.S.C. § 1920, Congress treated fees paid to the clerk of court, and fees paid to the United States Marshal Service, as one category. *See* 28 U.S.C. § 1920(1). The fact that both types of fees go directly into the public coffers may well have influenced Congress' decision to permit taxation of those costs. As the Seventh Circuit observed, "a private process server may do the same thing as a United States Marshal, and may do it more efficiently and cheaper. But whatever the similarities between the functions performed, a private process server does not become a Marshal." *Collins,* 96 F.3d at 1059.

Turning to the case at bar, defendants used a private process server to serve the subpoenas and summons in the litigation. This court holds that private process server fees are not properly recoverable under the general taxation-of-costs statute, 28 U.S.C. § 1920. Thus, the court must disallow the $525.00 awarded to defendants by the clerk of the court.

## B. *Fees for Witnesses*

■ Plaintiffs object to the award of fees for witnesses subpoenaed by defendants. Defendants listed $400 in fees for witnesses in the bill of costs: $360 in trial witness fees, and $40 in deposition witness fees for Larry Rowe. *See* Ex. C to Bill of Costs. The clerk awarded to defendants the entire $400 sought.

Plaintiffs argue that the fees for trial witnesses are non-taxable, because defendants did not ultimately call any of these witnesses to take the stand at trial. Defendants contend that these were necessary trial witnesses, regardless of whether they testified. Defendants point out that the witnesses were approved by the magistrate judge prior to trial, and their names appear in the final pre-trial order. Defendants also note that all of the witnesses appeared at trial, and were recognized by the court, even though they did not ultimately testify at trial.

Plaintiffs further argue that fees for Larry Rowe's attendance at his deposition are non-taxable, because his deposition was not used at trial. Defendants argue the attendance fees for Larry Rowe are taxable, because his deposition was reasonably necessary for preparation for trial, at the time it was taken.

■ Under 28 U.S.C. § 1920, the court may tax "fees and disbursements for printing and witnesses." 28 U.S.C. § 1920(3). Witness expenses are generally limited by the provisions of 28 U.S.C. § 1821. Section 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." 28 U.S.C. § 1821(b). The $40 per day allowance applies not only to a witness subpoenaed to testify at trial, but also to

---

**5.** The court is aware that the position adopted in the case at bar appears to contradict the taxation-of-costs guidelines issued by the Eastern District of Virginia. The guidelines provide that fees for service of summons and other process, service of trial subpoena, and service of deposition subpoena (for depositions taxed as costs) are taxable. The court first notes that the guidelines do not purport to be a unanimous practice of the courts in this district.. *See* Taxation of Costs Guidelines, Eastern District of Virginia, May 16, 1997 (revised). Moreover, the guidelines themselves merely provide specific examples of costs that are taxable under Fed.R.Civ.P. 54(d) and 28

U.S.C. § 1920. In deciding this issue, the court must give due weight to the federal statutes and procedural rule governing taxation of costs, regardless of the local taxation-of-costs guidelines.

**6.** Rule 45 of the Federal Rules of Civil Procedure was amended in 1991 to limit the United States Marshal's duties in serving trial subpoenas. Congress has not amended the taxation-of-costs statute in the seven years since Rule 45 was amended. A seven-year delay seems to suggest an intention by Congress to leave the statute unchanged, not merely an oversight to do so.

a witness who is in attendance "before any person authorized to take his deposition pursuant to any rule or order of a court of the United States." 28 U.S.C. § 1821(a)(1). Thus, the prevailing party is entitled to the $40 per day attendance fees for a witness attending a deposition. *See, e.g., Newell,* 217 B.R. at 76 n. 6; *Scallet v. Rosenblum,* 176 F.R.D. 522, 528–29 (W.D.Va.1997). In addition, the prevailing party may recover costs for fees, mileage, and subsistence of witnesses who appeared, and those who, believed to be necessary, appeared but did not testify. *Int'l Wood Processors v. Power Dry, Inc.,* 598 F.Supp. 299, 304 (D.S.C.1984), *aff'd,* 792 F.2d 416 (4th Cir.1986).

Turning to the case at bar, the court finds that defendants reasonably believed it was necessary to subpoena all ten witnesses to appear at trial. Counsel for defendants obtained the approval of the magistrate judge before serving the subpoenas. None of the witnesses were "inappropriate to the issues presented." *Principe,* 95 F.R.D. at 37. Each subpoenaed witness was identified as having information pertinent to allegations of housing discrimination and/or employment discrimination at the mobile home park. Moreover, the deposition of Larry Rowe was used at trial, contrary to plaintiffs' assertion. Since counsel's decision to subpoena these witnesses was "reasonably necessary" at the time the subpoenas were served, the court affirms the clerk's award of $400.00 to defendants for witness fees.

### C. Costs Incident to Depositions

■ Plaintiffs object to the award of costs incident to taking depositions. In the bill of costs submitted to the court, defendants listed $7,897.71 in costs incident to taking eleven (11) depositions. *See* Ex. E to Bill of Costs. The clerk awarded to defendants $5,561.00 of the $7,897.71 total.[7]

Plaintiffs argue that the costs are non-taxable, because defendants did not use nine of the eleven depositions at trial, and some of the deponents were never called to testify at trial. Plaintiffs argue that costs incident to

the depositions of Donald Smith and Zina T. McGhee, in particular, are non-taxable, because the two were listed as expert witnesses for defendants, and the court "did not ultimately dispose of the Plaintiffs' Motion to exclude testimony of expert witnesses." Pls.' Memo. in Support of Mo. to Review Taxation at 2–3, ¶ 4.

Plaintiffs concede that defendants used two of the eleven depositions, i.e., the depositions of George Emerson and Joan Andrews, to impeach witnesses on the stand at trial. Nonetheless, plaintiffs argue that the costs incident to taking the depositions of plaintiffs Emerson and Andrews are taxable only to those plaintiffs, because the two depositions "were used only in the particular cases of Andrews and Emerson and not in presentation of evidence for Cofield, Wallace and Lasha." *Id.* at 2, ¶ 3.

■ Plaintiffs' position is inconsistent with Fourth Circuit case law. Under the general taxation-of-costs statute, 28 U.S.C. § 1920, a judge or clerk may tax "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Courts have struggled to define the phrase "necessarily obtained for use in the case." At one time, the rule in this district, as held in *Sperry Rand Corp. v. A–T–O, Inc.,* 58 F.R.D. 132 (E.D.Va.1973), was that costs of deposition testimony obtained "merely for discovery" or merely for "convenience of counsel" should be borne by the party taking discovery; the costs were taxable only if the deposition was introduced at trial, or used for impeachment purposes. *Id.* at 138–39. Since *Sperry,* the Fourth Circuit has held that the costs of a deposition are taxable when a deposition is used at trial, or "when the taking of a deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Fed. Sav. & Loan,* 830 F.2d 522, 528 (4th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988).

---

7. The clerk correctly disallowed $2.43 per page of deposition transcript for expedited delivery fees.

The rules of *Sperry* and *LaVay* cannot be reconciled. *LaVay* overruled *Sperry sub silentio*, "at least to the extent that *Sperry* holds that deposition transcripts must be introduced at trial before they may be taxed." *Jop v. City of Hampton*, 163 F.R.D. 486, 488 (E.D.Va.1995)(Doumar, J.); *see Board of Directors, Water's Edge v. Anden Group*, 135 F.R.D. 129, 133 (E.D.Va.1991). Although no full trial occurred in *LaVay*, its principles are applicable to the case at bar. As one court observed, "[t]he broad language of *LaVay* suggests that the Fourth Circuit also intended the standard it propounded to apply even in cases that go to trial." *Water's Edge*, 135 F.R.D. at 132.

Finally, the district court has "great latitude" to determine whether deposition costs were "reasonably necessary." *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362, 1363 (5th Cir.1983); *United States v. Kolesar*, 313 F.2d 835, 840 (5th Cir.1963). As this court noted in *Jop*,

> [s]uch a determination will obviously involve some subjective judgment by the court—assessing in hindsight an individual attorney's trial strategy. No precise formula or rule can or should be devised. Lawyers will often disagree about what is "reasonably necessary" to prepare for a trial. The court must be guided by its own understanding of the necessities of legal practice, applied to the facts and circumstances of the individual case.

163 F.R.D. at 488.

Although "reasonably necessary" has been given no specific definition, its meaning has been carefully circumscribed to exclude materials that were obtained "for convenience only." *Scallet*, 176 F.R.D. at 526. The material from the deposition need not be used at trial, but need only be "relevant and material" for the preparation in the litigation. *Id.; see also Water's Edge*, 135 F.R.D. at 132–34; *Jop*, 163 F.R.D. at 488; *Barton v. Lane Co.*, 1995 WL 835486 *1, *3 (W.D.Va.1995). The proper inquiry is whether the deposition was "necessary to counsel's effective performance and proper handling of the case." *Marcoin, Inc. v. Edwin K. Williams & Co.*, 88 F.R.D. 588, 590 (E.D.Va. 1980).

The deposition need only have seemed necessary at the time of the taking of the deposition. *Jop*, 163 F.R.D. at 488. As explained by one court, "omniscience is not the standard." *Water's Edge*, 135 F.R.D. at 133. Events that occur after the taking of a deposition, and at trial, may be considered in the event they shed light on whether a party should have known that a deposition was unnecessary at the time of its taking. *Id.* at 132. "A deposition taken within the proper bounds of discovery, even if not used at trial, will normally be deemed to be 'necessarily obtained for use in the case.'" *Id.*

If the deposition was "reasonably necessary" in preparation for the litigation, the prevailing party is entitled to reimbursement for all costs incident to the deposition, including the cost of the reporter's attendance and the cost of the original transcript of the deposition. *Scallet*, 176 F.R.D. at 528; *see International Wood Processors*, 598 F.Supp. at 304. These costs are available even if the deponent is a party to the litigation. *Scallet*, 176 F.R.D. at 528. The prevailing party may also recover costs for one copy of the deposition transcript, in addition to the original; it is reasonable to request a copy of a deposition that may be tabbed, annotated, highlighted, and referenced as necessary, in order to make full use of the material. *Id.; see Principe*, 95 F.R.D. at 37.

Bearing these principles in mind, the court turns to the facts of the instant case. It is irrelevant whether the eleven depositions were ultimately used at trial, or the deponents were called to testify at trial. The court must determine whether the eleven depositions were "reasonably necessary" in preparation for trial, at the time they were taken.

Defendants seek costs incident to taking eleven depositions. Six deponents of the eleven were parties to the litigation. Two deponents were expert witnesses whom defense counsel planned to put on the stand at trial. The remaining three deponents were former or current tenants or employees of defendants. These tenants and employees had critical knowledge concerning defen-

dants' alleged housing and employment discrimination.

The issues in this case were, to a large extent, fact-driven, and while the number of depositions may seem large, the court believes all eleven were reasonably necessary, given the circumstances of the case. The suit was originally filed as a class action. Although the court denied class certification, plaintiffs alleged racial discrimination in various forms, allegedly witnessed by several tenants and employees at the mobile home park, over a significant period of time.

Based on a review of the entire record, and this court's recollections of the proceedings, the court finds that the depositions were not obtained for "mere discovery" or merely for the "convenience of counsel"; rather, the depositions were taken within the proper bounds of discovery, and were necessary to defense counsel's proper handling of the case. All eleven depositions were reasonably necessary in preparation for trial, at the time they were taken. Defendants are entitled to the costs incident to taking the depositions, as documented in the bill of costs. The clerk's taxation of these costs is AFFIRMED.

█ Further, the court disagrees with plaintiffs' contention that the costs incident to deposing plaintiffs Emerson and Andrews are taxable only against Emerson and Andrews. The three African–American plaintiffs alleged violations of Title VIII of the Civil Rights Act of 1964, while Emerson and Andrews alleged various violations of the Fair Housing Act. However, all five plaintiffs relied heavily on the testimony of Emerson and Andrews at trial, and their depositions were used by defendants for impeachment purposes. As employees of defendants, Emerson and Andrews had extensive knowledge concerning incidents of alleged racial discrimination at defendants' mobile home park. The clerk properly taxed the costs of Emerson's and Andrews' depositions against all five plaintiffs. The clerk's taxation of these costs is AFFIRMED.

### D. *Miscellaneous Objections*

Plaintiffs make two additional objections to the clerk's taxation of costs in this matter.

First, plaintiffs claim that the clerk should not have assessed costs against plaintiff Keith Cofield. According to plaintiffs, defendants entered into a binding accord and satisfaction with plaintiff Keith Cofield in regard to his back lease payments and the costs incurred in this suit. Defendants concede that an accord was reached, but argue that Cofield did not satisfy the terms of the accord before the defendants filed for these costs, and it is not, therefore, binding on them. Neither party has submitted any evidence of an accord. Without agreement between the parties as to the terms of any accord, or any evidence before this court of an accord, the court DENIES plaintiff Cofield's objection to the taxation of costs against him.

█ Finally, plaintiffs claim that defendants are not entitled to costs in this suit because defendants have not submitted a letter to the court, stating that the parties have made a good-faith effort to narrow the areas of disagreement concerning costs. Plaintiffs are mistaken that the lack of evidence of good-faith negotiations between the parties poses a bar to taxation of costs. The local taxation-of-costs guidelines do not require such a letter; rather, "[c]ounsel is *requested* to furnish a statement that a good-faith effort to narrow the areas of disagreement has been made pursuant to Local Rule 7(D)." Taxation–of–Costs Guidelines, Eastern District of Virginia, May 16, 1997 (emphasis added). The court could locate no statute, rule, or regulation requiring such a letter. The clerk taxed the costs in this matter, without a letter having been provided, and without objection from plaintiffs. The court finds that plaintiff's objection at this time has no merit whatsoever.

### III. *Conclusion*

For the foregoing reasons, plaintiffs' motion to review taxation of costs is **GRANTED** in part, and **DENIED** in part. The court disallows $525.00 in fees for service of subpoenas, as explained in Part II.A. of this opinion. In all other respects, the clerk's taxation of costs is affirmed. Accordingly, the clerk is **DIRECTED** to tax the sum of

$6,124.98 in costs, to be divided equally against all five plaintiffs.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for plaintiffs and counsel for defendants.

IT IS SO **ORDERED**.